IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH GRAYDON, | ) |
|           Plaintiff, | ) |
| v. | ) Case No. |
| GROSSE POINTE MANOR, L.L.C., | ) |
|           Defendant. | ) |

## COMPLAINT

The Plaintiff ELIZABETH GRAYDON (hereinafter referred to as "GRAYDON") and for her complaint against the Defendant GROSSE POINTE MANOR, L.L.C. (hereinafter referred to as "GROSSE POINTE") states:

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101 ET. SEQ.

1. This is an action brought for damages sustained by GRAYDON by reason of GROSSE POINTE's violation of her civil rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq.

2. At all times relevant hereto, GRAYDON was a resident of Glenview, Illinois and of the Northern District of Illinois.

3. At all times relevant hereto, GROSSE POINTE was a limited liability company organized and existing under the laws of the state of Illinois, did substantial business in the Northern District of Illinois and was located at 6601 W. Touhy Avenue, Niles, Illinois 60714.

4. At all times relevant hereto, GROSSE POINTE was an "employer" within the meaning of the Americans with Disabilities Act.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 1331.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 since the complained of conduct occurred in this district.

7. On or about June 10, 2010, GRAYDON was hired as an MDS/Care Plan Coordinator at GROSSE POINTE.

8. From the commencement of her employment until she was terminated, GRAYDON received favorable reviews and commendations concerning her work from her superiors at GROSSE POINTE.

9. On or about October 26, 2016, GRAYDON was diagnosed with fibromyalgia.

10. GRAYDON informed Sherry Mauer, her direct supervisor and Executive Director, of her fibromyalgia.

11. Moreover, on or about May 11, 2018, GRAYDON discovered that she had progressive osteoarthritis in her right knee which resulted in her having a right knee replacement on December 13, 2018.

12. GROSSE POINTE was aware of GRAYDON's progressive osteoarthritis and that she did have her knee replaced on December 13, 2018.

13. At all times relevant hereto, it was the policy of GROSSE POINTE not to discriminate against an employee on the basis of her or her disability.

14. Nevertheless, commencing in or about December, 2020, GRAYDON was discriminated against because of her disability, namely, fibromyalgia.

15. Up to the time that GRAYDON was terminated on February 10, 2021, she was never cited by the Illinois Department of Public Health for erroneous MDS or care plans during all annual licensure inspections and complaints inspections.

16. Even though GRAYDON was on FMLA stemming from her knee replacement, she still worked from home forty hours per week which resulted in her sick leave having to be extended for approximately a month.

17. On or about February 6, 2020, GRAYDON discovered, by way of an MRI, severe central spinal stenosis at L3-L4 and right sided disk protrusion.

18. Ms. Mauer from GROSSE POINTE was advised of these MRI results and of a recommendation for further spinal fusions to relieve the pain GRAYDON was experiencing.

19. On March 30, 2020, Dr. Stadlin, GRAYDON's neurologist, provided GROSSE POINTE with a letter stating that due to the COVID-19 pandemic, GRAYDON's spinal surgery would have to be postponed.

20. At that time, Dr. Stadlin recommended that GRAYDON work from home.

21. In April, 2020, the first positive case of COVID-19 was diagnosed at GROSSE POINTE.

22. At the time, GRAYDON was working from home because she was waiting for her surgery.

3

23. Upon the discovery of the positive case of COVID-19, Ms. Mauer told GRAYDON that the nurses would be sending her text messages each morning and she was to go into the electronic medical records and enter the vital signs for them since they were caring for sick residents.

24. GRAYDON was also asked to document daily for all residents that had COVID-19 that they were staying in rooms alone to prevent the spread of the virus.

25. In May, 2020, a second outbreak of COVID-19 hit GROSSE POINTE.

26. On August 7, 2020, GRAYDON had spinal fusion surgery.

27. On September 1, 2020, GRAYDON was suffering from fibromyalgia flare ups as a result of her surgery and required high doses of pain medication.

28. GRAYDON advised Ms. Mauer of her medication.

29. On November 4, 2020, GRAYDON received an email from Ms. Mauer indicating that her service dog, Lulu, was allowed in the building when she returned to work.

30. For the first time, Ms. Mauer indicated to her that her productivity had declined and that care plans and PCC set ups were still behind but did not delineate what she meant by care plans and PCC set ups still being behind.

31. Ms. Mauer's representations were false.

32. At the time that Ms. Mauer sent this email, GRAYDON was never given any guidelines concerning the care plans and PCC set ups.

33. On November 5, 2020, Ms. Mauer emailed GRAYDON and indicated that she needed to reconcile the entire payor census daily for the whole building.

34. GRAYDON was never informed that this new responsibility was added to her monthly tasks until the billing was due.

35. In over ten years of working for GROSSE POINT, it was never her responsibility to reconcile the entire payor census daily for the whole building daily.

36. On November 14, 2020, GRAYDON returned to work at the GROSSE POINTE facility full time.

37. On November 20, 2020, GRAYDON received an email from Ms. Mauer stating that GRAYDON was priceless and she was glad that GRAYDON was back at work.

38. On November 27, 2020, GRAYDON sent Ms. Mauer an email requesting an explanation concerning her purported decline in productivity.

39. GRAYDON further requested a meeting to review any written documents and discuss the expectations of GROSSE POINTE going forward.

40. Ms. Mauer did not grant GRAYDON's request for a meeting.

41. GRAYDON subsequently sent an additional three emails to Ms. Mauer requesting a written explanation as to her purported decline in productivity.

42. No meeting was ever granted.

43. On December 9, 2020, the weekly CMI meeting was held. In this meeting, Michelle Castronova, the Admissions Coordinator and Director of Nursing at GROSSE POINTE, erroneously reported that GRAYDON had failed to open MDS assessments which would bring the facility higher reimbursements.

44. As a result of Ms. Castronova's wrongful conduct, Ms. Mauer presented GRAYDON with a disciplinary action on December 16, 2020.

5

45. As a direct and proximate result of Ms. Castranova's and Ms. Mauer's conduct, GRAYDON suffered extreme anxiety on her part and fibromyalgia flare ups which both Ms. Castronova and Ms. Mauer knew was going to occur.

46. On December 28, 2020, Ms. Mauer moved GRAYDON's office to the first floor where she claimed GRAYDON could work without distractions. Such representation was false since GRAYDON's new office would be located in the Physical/Occupational Therapy room directly next door to Ms. Castronova's office and the front entrance to the facility.

47. On December 25, 2020, GROSSE POINTE posted GRAYDON's MDS Coordinator job on Indeed.com even though GRAYDON had not been advised that her job was in jeopardy.

48. GRAYDON brought this to the attention of Ms. Mauer who claimed that she did not know that the job was posted.

49. GRAYDON provided Ms. Mauer with a screenshot of the posting.

50. GRAYDON then requested a meeting with Ms. Mauer to discuss this posting. Ms. Mauer never got back to her.

51. On December 30, 2020, GRAYDON was written up for bringing her service dog upstairs to see her 95 year old aunt who was a resident at GROSSE POINTE.

52. Due to the stress and anxiety Ms. Mauer was causing, GRAYDON had to visit her primary care physician, Dr. Vargas.

53. On January 2, 2021, GRAYDON sent Ms. Mauer a letter regarding her fibromyalgia disability.

54. On January 4, 2021, GRAYDON had a discussion with Ms. Mauer concerning her purported decline in productivity.

55. Ms. Mauer could not provide any specific information regarding GRAYDON's purported decline in productivity and could not even provide a plan of correction.

56. In fact, GRAYDON asked Ms. Mauer if she actually thought that GRAYDON was struggling.

57. Ms. Mauer had no response.

58. On January 5, 2021, GRAYDON's MDS Coordinator position was posted again on Indeed.com.

59. GRAYDON sent a screenshot to Ms. Mauer and asked her why they were doing this when GRAYDON was not planning on leaving.

60. Ms. Mauer's response was that this was a Plan B if GRAYDON was planning on leaving.

61. On January 22, 2021, GRAYDON received a text message from Ms. Mauer indicating that GRAYDON was an integral part of the team and that she did not have a new MDS Coordinator and she prayed that she never would.

62. On January 25, 2021, GRAYDON was again suffering from a severe fibromyalgia flare up which required an immediate care visit.

63. Due to the transpiration of events at GROSSE POINTE, GRAYDON was confined to bed rest for two days.

64. Even though GRAYDON was on excused medical leave, Ms. Mauer requested on January 28, 2021 that GRAYDON go to CVS Pharmacy for a COVID swab.

65. Despite Ms. Mauer's prior assurances to GRAYDON regarding her employment, on January 29, 2021, GRAYDON's job was again posted on Indeed.com.

66. GRAYDON subsequently inquired from Ms. Mauer, for the a third time, as to why her job was being posted.

67. Ms. Mauer's response was that she did not do that and that she would email Nicholas if there was something wrong with their platform and that she did not place the ad.

68. On February 3, 2021, GRAYDON's MDS Coordinator job was posted again.

69. GRAYDON sent a screenshot of the posting to Ms. Mauer and again asked why her job was posted.

70. Once again, Ms. Mauer denied having posted it.

71. Due to the increased stress that GRAYDON was receiving from both Ms. Castronova and Ms. Mauer, GRAYDON needed to see her primary care physician again on February 4, 2021.

72. On February 5, 2021, GRAYDON sent an email to Ms. Mauer asking if she could work on Saturday to catch up with the admissions that had occurred on Friday.

73. Ms. Mauer responded and indicated that GRAYDON could work ten minutes, but the rest of her work could wait until Monday.

74. On February 5, 2021, GRAYDON went to Walgreens to pick up some medication and was advised that her insurance coverage had been terminated by GROSSE POINTE.

75. GRAYDON advised Ms. Mauer of the termination of her insurance coverage.

76. Ms. Mauer responded that there must have been some glitch and that she would cover any out-of-pocket costs that GRAYDON incurred.

77. GRAYDON incurred $121.00 in medications to which GROSSE POINTE never reimbursed her.

78. On February 10, 2021, Ms. Mauer terminated GRAYDON by way of email.

79. The claimed reason for termination GRAYDON was Ms. Castronova falsely reporting to Ms. Mauer that GRAYDON had failed to properly code an orthopedic diagnosis on a Medicare A assessment for two residents. GRAYDON was going to complete the assessments on Saturday, February 5, 2021.

80. GROSS POINTE's claimed reason for terminating GRAYDON was merely a pretext for its unlawful discrimination based on GRAYDON's disability since GRAYDON did not improperly code an orthopedic diagnosis.

81. GROSSE POINTE has, therefore, violated the Americans with Disabilities Act by discriminating against GRAYDON because of her disability.

82. On or about March 17, 2021, the Equal Employment Opportunity Commission received GRAYDON's charge of employment discrimination.

83. On July 21, 2021, the Equal Employment Opportunity Commission issued GRAYDON a notice of right to sue. A true and correct copy of this notice is attached hereto as ***Exhibit A***.

84. Less than ninety days have expired since GRAYDON's receipt of the notice of right to sue.

85. GROSSE POINTE's violation of GRAYDON's rights under the Americans with Disability Act has caused her pecuniary damages.

WHEREFORE, the Plaintiff ELIZABETH GRAYDON requests that this Court enter judgment in her favor and against the Defendant GROSSE POINTE MANOR, L.L.C. as follows:

    a. Enjoining GROSSE POINTE from engaging in such unlawful employment practices as alleged in this amended complaint.

    b. Reinstating GRAYDON to her position at GROSSE POINTE at the rate of pay comparable to what should have been receiving if not for the civil rights violations committed against her by GROSSE POINTE.

    c. Making GRAYDON whole as to all salary, benefits and seniority status that would have accrued but for the civil rights' violations committed by GROSSE POINTE.

    d. Alternatively, in the event that GROSSE POINTE is unwilling to reinstate GRAYDON, that GRAYDON be awarded front pay.

    e. Awarding GRAYDON compensatory and punitive damages in amounts authorized under the Americans with Disabilities Act.

    f. Awarding GRAYDON attorney's fees and pre-judgment interest.

    g. Awarding GRAYDON such other relief as this Court may deem appropriate.

THE PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully submitted,

/s/ Joel F. Handler
Joel F. Handler (#1115812)
One E. Wacker Drive, Suite 510
Chicago, Illinois 60601
(312) 832-0008
jhandler@handlerlawgroup.com
Attorney for the Plaintiff,
ELIZABETH GRAYDON